694 So.2d 1016 (1997)
Alison CRESSEY, Agenda for Children, and the Welfare Rights Organization
v.
Mike FOSTER, Governor of Louisiana, Madlyn Bagneris, Secretary of the Louisiana Department of Social Services, and the Louisiana Department of Social Services.
No. 96 CA 2716.
Court of Appeal of Louisiana, First Circuit.
April 25, 1997.
*1017 Martha Kegel and William P. Quigley, New Orleans, for Plaintiffs/Appellants, Alison Cressey, Agenda for Children and the Welfare Rights Organization.
Steven Mayer, Cheney Joseph and Andrew Kopplin, Baton Rouge, for Defendants/Appellees, Mike Foster, Governor, State of Louisiana, Madlyn Bagneris, Secretary of the Louisiana Department of Social Services, and the Louisiana Department of Social Services.
Before WATKINS, GONZALES and KUHN, JJ.
GONZALES, Judge.
Plaintiffs/appellants attempt to put at issue in this appeal "Louisiana's State Plan for the Temporary Assistance for Needy Families Block Grant" ("State Plan"), along with certain emergency rules promulgated by the Louisiana Department of Social Services in the Fall of 1996.

*1018 PROCEDURAL HISTORY AND LOWER COURT RULINGS

On September 30, 1996, plaintiffs, Alison Cressey (a private citizen allegedly adversely affected by what she characterizes as Department of Social Services "rules"), Agenda for Children, and the Welfare Rights Organization, filed suit in the district court seeking "Declaratory and Injunctive Relief and Stay to Prevent Irreparable Injury from Defendants' Intended Violation of Public Notice Requirements." Made defendants were Mike Foster (Governor of Louisiana), Madlyn Bagneris (Secretary of the Louisiana Department of Social Services), and the Louisiana Department of Social Services ("DSS"). The first paragraph of plaintiffs' petition summarizes the nature of their objection to the state action at issue:
This is a petition for injunctive relief to prevent Defendants from causing irreparable injury by carrying out their stated intention to take certain voluntary actions on September 30 or October 1, 1996, which will effectuate their own voluntary policy choices as to how and when to implement the new federal welfare reform law, without giving the public prior notice of their policy choices or an opportunity to comment. These acts deny due process of law, violate the requirement in the federal act that there be a 45 day opportunity to comment on the state's plan for welfare reform and violate the Louisiana Administrative Procedure Act....
Additionally, plaintiffs alleged that the defendants' decision to submit the State Plan to the federal government in advance of the requisite implementation date of July 1997, without prior opportunity for public comment, violated the public's right to know and to participate in government policy making, and, violated the state's Administrative Procedure Act and due process.[1] Plaintiffs complained that although early implementation of new federal requirements[2] will produce a temporary fiscal benefit to the state, it would also trigger, prematurely in their opinion, the beginning of a sixty month lifetime limit on "indigent recipients' assistance, including job training and other supportive services to facilitate the transition to work." Plaintiffs specifically cite as violative of public rights the defendants' plan to use emergency rulemaking to initiate a "discretionary change" to the AFDC welfare program which terminates a "$50 child support disregard" "without public input and in the absence of any emergency."[3] The following allegations were also made: that plaintiffs "have a liberty interest in submitting comments regarding the state's plan incorporating choices for this historic opportunity to reform its welfare system"; "plaintiff Alison Cressey and members of the Welfare Rights Organization have a property interest in their receipt of AFDC *1019 assistance which will be ended by the state's submission of a new state plan"; and, "[a]ll citizens of the state are denied due process by false certifications by the executive officials of our government[.]" Further, plaintiffs allege, "As taxpayers and organizations whose members are taxpayers the plaintiffs also have an interest in preventing the state government from incurring liability by committing to reform its welfare system before it is actually able to do so, which can incur financial penalties, sanctions, or monetary liability."
The district court declined to grant preliminary injunctive relief to the plaintiffs. Thereafter, on October 30, 1996, a "Consent Order" was filed by the parties withdrawing plaintiffs' request for hearing on the requested injunction and stay, and stating:
(1) The Administrative Procedure Act, at L.S.A.-R.S. 49:962, states that "[e]ach agency shall provide by rule for the filing and prompt disposition of petitions for declaratory orders and rulings as to the applicability of any rule or order of the agency."
(2) The Louisiana Department of Social Services does not have in place a rule or procedure for the filing and disposition of petitions for declaratory orders and rulings.
(3) Therefore, Plaintiffs and Defendants have agreed to the following procedure for remand of the issues presented in this litigation, in order to compile a record to assist the District Court and expedite the pending litigation:
a. Plaintiffs shall serve Defendants by October 31, 1996, ... a "Petition for Declaratory Ruling as to the Applicability of the Administrative Procedure Act to 1) the State Plan Submitted to the Federal Department of Health and Human Services on October 1, 1996, and 2) the State's Intended Implementation by Emergency Rule November 1, 1996, of a IV-D distribution procedure regarding the distribution of child support collected by the State." The Petition shall state Plaintiffs' claims as to why they allege that the State Plan and the distribution procedure are illegal under the APA.
b. Defendants shall serve Plaintiffs by November 15, 1996, ... a compiled record and a Declaratory Ruling on the Petition which is responsive to Plaintiffs' claims.
c. Plaintiffs shall serve Defendants by November 21, 1996, ... any supplemental evidence and argument.
d. Defendants shall serve Plaintiffs by November 27, 1996, ... a rebuttal if desired, and shall file the record with the Court.
e. The parties request that the matter be scheduled for hearing on December 9, 1996.
f. At the hearing, the above-described record and such additional evidence as admitted by the Court, at the request of the parties or the Court, shall be considered by the Court in ruling on this matter. Both parties reserve the right to present evidence and/or testimony and to object to the presentation of evidence and/or testimony at the hearing.
Plaintiffs' "Petition for Declaratory Ruling," dated October 31, 1996, contained two major headings with numerous subparts, to which the state filed an "initial response," dated November 15, 1996, breaking plaintiffs' petition down into twelve "claims," and filing a "response" to each of the twelve "claims." On November 23, 1996, plaintiffs filed a document entitled "Supplementary Evidence and Argument in Petition for Declaratory Ruling," to which the state filed a "second response," dated November 26, 1996, breaking plaintiffs' supplementary arguments down into eight "claims," and filing a "response" to each of the eight "claims." Thus, plaintiffs essentially presented a total of twenty claims to DSS, and DSS responded with twenty rulings in the form of "responses."[4] However, in item (3)(a) of their "Consent Order," the parties agreed the matter in litigation was confined to two issues: the applicability *1020 of the La.R.S. 49:950 et seq. to (1) the "State Plan", and (2) to the November 1, 1996 emergency rule regulating child support distribution. It is apparent that the twenty claims and rulings were merely part and parcel of the plaintiffs' two main contentions. Moreover, the trial court chose to specifically address only two substantive issues in his reasons for judgment/judgment; therefore, our review of the matter is limited to these two issues. The "Judgment with Written Reasons" of the lower court stated, in pertinent part:
This court finds that the State of Louisiana's submission of a welfare reform plan, in and of itself, was not a "rule" that must be promulgated by the Louisiana Administrative Procedure Act. This court further finds, however, that other significant acts associated with said submissionparticularly the formulation of the state's objective criteria for the delivery of benefits and the determination of eligibilityconstitute" emergency rules" that were temporarily justified in a balancing of interests of those hardships imposed by said emergency action versus the residual public interest....
WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that all said afore-cited law be complied with relative to public notice, comment and input within 90 days of the date hereof and that such amendments, deletions[,] corrections and improvements be made as are deemed appropriate and indicated by the public good and interest. In the default thereof, the entire State of Louisiana's plan as submitted to the Federal Department of Health and Human Services for welfare reform along with such emergency rules that alter child support provisions, are hereby declared ultra vires, null and void as of such date, namely March 10, 1997. This court shall retain jurisdiction over this matter relative to the State of Louisiana's compliance or non-compliance, both procedurally and substantively, with this order.
Plaintiffs have appealed this judgment and make the following assignments of error:
(1) The District Court erred in finding that the challenged policies adopted by emergency rule were "temporarily justified". No legal justification existed for Appellees' use of emergency rulemaking procedures.
(2) The District Court erred in arriving at the finding described in Assignment of Error No. 1 without any explanation of what the alleged justification was. The only interests mentioned by the District Court in its determination of whether the emergency rules were legally justified were the interests of Appellants, not Appellees: a) "those hardships imposed by said emergency action," and b) "the residual public interest." The only hardships imposed by Appellees' emergency actions were to the impoverished children and adults receiving welfare, and not to Appellees. The District Court's reference to the "residual public interest" is explained in the two sentences of the opinion which follow, and refer to the right of public input and participation. The only other interests mentioned in the opinion are the need of many people for welfare benefits to protect their existence. All of the interests cited by the District Court are those of Appellants, not Appellees.
(3) The District Court erred by finding that whether emergency rulemaking is legally justified under the LAPA is determined by a "balancing of interests." The LAPA, at Section 953(B), sets forth four specific requirements, at least one of which must be satisfied in order to validate the use of emergency rule-making. The test is not one of balancing; it is whether Appellees have shown the existence of an emergency as defined by the LAPA which necessitated the use of emergency rulemaking. Neither the LAPA nor the jurisprudence allows courts to vitiate the requirements of the APA's rulemaking procedures by reference to a "balancing of interests."
(4) The Court erred by finding that Appellees' challenged actions were "emergency rules" even though one of the challenged actions, the denial of educational opportunities to participants in the welfare work program, was taken entirely in secret, without following even emergency rulemaking procedures and without publishing an emergency rule.

*1021 (5) The Court erred by finding that Appellees' submission of the State Plan for how and when to implement the new federal welfare law was not a "rule." The new federal welfare law, at Section 116(b)(1), provides that the act of submission of a State Plan under the new federal law is the way in which a State exercises its policy option to accelerate the effective date of the new federal law in that State.
(6) The Court erred in failing to invalidate the challenged actions which were taken by Appellees in the absence of prior compliance with regular rulemaking procedures.
(7) The Court erred in finding that provisions of notice and an opportunity to be heard after the agency action already was taken satisfies procedural due process under the Constitution.
(8) The Court erred in finding that provision of notice and a public comment period after the agency action already was taken satisfies the LAPA's requirements that no policy, other than one satisfying the LAPA's emergency rule-making criteria and procedures, is valid unless prior to agency implementation the agency a) published in the Louisiana Register fiscal and economic impact statements approved by the Legislative Fiscal Office, and b) submitted reports to the legislative oversight committees in order to allow them time to approve or disapprove the proposed policies.
The defendants have neither appealed nor answered the appeal of plaintiffs, and thus, any part of the trial court judgment adverse to them is now final.[5]

PROCEDURAL POSTURE OF CASE
When plaintiffs filed their initial petition entitled "Declaratory and Injunctive Relief and Stay to Prevent Irreparable Injury from Defendants' Intended Violation of Public Notice Requirements," arguably, they were seeking relief under La.R.S. 49:953(B)(3), which provides a procedure for contesting the validity of an emergency rule in an action for declaratory judgment which is like that provided for in La.C.C.P. art. 1871 et seq. and allows for the discovery and presentation of evidence as in other trial court proceedings. The rigorous prerequisites and limitations of La.R.S. 49:963[6] are not applicable to an action under La.R.S. 49:953(B)(3). However, by consent of the parties, the trial court proceeding was converted to one for declaratory judgment to one of judicial review under La.R.S. 49:964. By consent order signed by the parties, the matter was remanded to the agency. The agency rendered declaratory orders/rulings under La.R.S. 49:962[7] upholding the prior actions of DSS, a record was confected, and the matter was thereafter returned to the district court for judicial review. The declaratory orders/rulings of DSS took the form of the some twenty "responses" to the "claims" of plaintiffs, which fall within the two main issues described hereinabove.
The criteria for judicial review[8] of a decision or order of an agency is found in La.R.S. 49:964(G), which reads:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because *1022 the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
The only viable argument presented by this appeal relates to whether the rulemaking which occurred was made upon unlawful procedure.

STATUS OF STATE PLAN AS A "RULE"

Assignment of Error 5
Appellants contend that certain policy changes were effected by DSS by means of unauthorized emergency rulemaking, and in particular, that the State Plan submitted by the state on October 1, 1996, to the federal government constituted a "rule." The Department of Social Services is indisputably a state "agency" and is charged by La.R.S. 36:471 with the responsibilities of developing and providing social services, and improving social conditions for the citizens of Louisiana. See La.R.S. 49:951(2). On October 1, 1996, the secretary of DSS, Madlyn B. Bagneris, forwarded to the United States Department of Health and Human Services a document entitled "Louisiana's State Plan for the Temporary Assistance for Needy Families Block Grant," accompanied by a cover letter which read, in pertinent part:
Attached is Louisiana's state plan for the Temporary Assistance for Needy Families program which will be called the Family Independence Program. This document should serve as our application for the TANF block grant effective October 1, 1996 as defined in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193). The state plan will be effective October 1, 1996.
The State Plan outlined the goals of Louisiana and stated the state's intent to implement the new federal requirements, and specifically stated that needy families would be subject to the "eligibility requirements as outlined in the Louisiana State Plan for the Title IV-A of the Social Security Act: Financial Assistance Aid to Families with Dependent Children that was in place for the state on October 1, 1996 with the following changes and additional requirements...." The State Plan went on to enumerate what those changes and additional requirements would be, all of which gave as an effective date, January 1, 1997,[9] except one (which is no longer at issue).[10] Appellants contend the trial court erred in finding this State Plan did not constitute a "rule" under the Louisiana Administrative Procedure Act (La.R.S. 49:950 et seq.). Section 951(6) of the Act reads as follows:
"Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency and those purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or persons regulated by the agency, which has general applicability and the *1023 effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency. "Rule" includes, but is not limited to, any provision for fines, prices or penalties, the attainment or loss of preferential status, and the criteria or qualifications for licensure or certification by an agency. A rule may be of general applicability even though it may not apply to the entire state, provided its form is general and it is capable of being applied to every member of an identifiable class. The term includes the amendment or repeal of an existing rule but does not include declaratory rulings or orders or any fees.
We find that the State Plan complained of by plaintiffs is nothing more than a statement of intent to enact rules and/or regulations which will contain the provisions outlined therein and, as such, does not implement any provision with respect to the citizens of Louisiana. The State Plan merely constitutes an "application" for a federal grant as indicated by Ms. Bagneris' comments which accompanied the submission of the application to the federal government.[11] Accordingly, we affirm that portion of the trial court judgment holding Louisiana's submission of a welfare reform plan was not a "rule."[12]

VALIDITY OF RULES PROMULGATED IN THE LOUISIANA REGISTER

Assignments of Error 1-4, 6-8
Appellants further contend other emergency rules actually published in the Louisiana Register by DSS under the rubric of emergency rulemaking were not authorized by law. Submitted as evidence, pursuant to the Consent Order described hereinabove, were drafts of three of these alleged emergency rules. Defendants maintain, and we agree, the pertinent inquiry in resolving this matter begins with determining what rules were actually promulgated by DSS. This issue has been clouded by the introduction into the record of drafts of rules not actually promulgated, and by the agency having ruled on "rules" it had not yet promulgated.[13] Nevertheless, at the time the record was made in the agency, the only emergency rule promulgated by DSS was published under 22 La.Reg., No. 11, p. 1119 (11/20/96), enacting La.Admin.Code, Title 67, § 2514, regarding the distribution of "child support collections."[14] Therefore, we presume the trial court ruling, upholding the propriety of the emergency rule, applied only to this regulation on the distribution of child support collections. Likewise, we limit our review to this rulemaking activity.
The newly enacted La.Admin.Code, Title 67, § 2514 does away with the prior state and federal practice of allowing a $50 "bonus" to AFDC recipients. The stated reason for the emergency rule is as follows:
Pursuant to Public Law 104-193, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, revisions have been made to the method in which Support Enforcement Services distributes *1024 child support collections. Prior federal law totally mandated the manner of distribution. Federal law now requires that reimbursement of the federal portion of the AFDC/FITAP benefits be made first; and then the state may retain or distribute the remainder as it chooses. Therefore, the state must now establish a procedure in order to distribute funds, and an Emergency Rule is necessary to prevent payments from being delayed to the applicant/recipient which could result in undue financial hardship.
The procedure which an agency must follow to adopt a rule is set forth in La.R.S. 49:953. Louisiana Revised Statute 49:953 requires an agency to publish notice of its intent to adopt, amend, or repeal any rule in the Louisiana Register. La.R.S. 49:953(A)(1). The agency must provide interested persons with copies of the intended rule, and it must offer them a reasonable opportunity to respond. La.R.S. 49:953(A)(2)(a) and (2)(b)(i). No rule shall be effective, nor may it be enforced, unless it was adopted in substantial compliance with the provisions of the Administrative Procedure Act. La.R.S. 49:954(A). Further, no rule shall be effective or enforceable unless (1) it was properly filed with the State Register, (2) a report on the rule was submitted to the legislature in accordance with La.R.S. 49:968, and (3) the approved economic and fiscal impact statements required by La.R.S. 49:953(A) were filed with the Department of the State Register and published in the Louisiana Register. An administrative rule adopted in accordance with the requirements of the Administrative Procedure Act generally becomes effective upon its publication in the Louisiana Register. La.R.S. 49:954(B). See generally Liberty Mutual Insurance Company v. Louisiana Insurance Rating Commission, 96-0793, pp. 5-6 (La.App. 1st Cir. 2/14/97) ___ So.2d ___ [1997 WL 77862].
An agency may, in limited circumstances, proceed with rulemaking without prior notice or hearing or upon an abbreviated notice and hearing where the provisions of La.R.S. 49:953(B)(1) have been met. The only circumstances enumerated by La.R.S. 49:953(B)(1) in which emergency rulemaking can be undertaken include: (1) if an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon shorter notice; (2) to the extent necessary to avoid sanctions or penalties from the United States; (3) to avoid a budget deficit in the case of medical assistance programs; or (4) to secure new or enhanced federal funding in medical assistance programs. The emergency rulemaking provisions further require a statement by the agency of its reason for finding it necessary to adopt an emergency rule which shall include "specific reasons why the failure to adopt the rule on an emergency basis would result in imminent peril to the public health, safety, or welfare, or specific reasons why the emergency rule meets other criteria provided in [Section 953(B)(1)] for adoption of an emergency rule." La.R.S. 49:953(B)(1).
As justification for adoption of the emergency rule, DSS contends that the change in federal law, which previously dictated the manner in which child support collections were distributed, and which now gives no direction to the state, necessitates the establishment of a state procedure in order to distribute these funds. DSS reasons an emergency rule is needed to prevent payments from being delayed to recipients which could result in undue financial hardship to these individuals. Plaintiffs argue in brief that the only hardship involved in the implementation of these rules is the hardship that will be felt by plaintiffs upon implementation of the rule which will operate to reduce the amount of benefits received by welfare recipients. Defendants argue that the "undue financial hardship" it referred to in its emergency rule will be suffered by the welfare recipients, because the change in the federal welfare laws leaves DSS without a legislative framework under which to make any payment of these child support collections.
The federal law at issue, 42 U.S.C. § 657, formerly provided that on monthly child support collections, the first $50 of any payments for a month shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable *1025 as assistance.[15] This law was amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, § 302, as amending 457, so that with regard to families currently receiving assistance from the state, the state is required to pay to the federal government the "Federal share" of the amount collected and has discretion whether to retain the remainder or distribute it to the family. The former federal requirement for payment of a $50 "bonus" to the family has been eliminated. The effective date of the federal law is stated as October 1, 1996. Pub.L. 104-193, § 395.
Previously, former 42 U.S.C. § 657(b) specifically directed the distribution of child support collected by a state as follows:
The amounts collected as support by a State pursuant to a plan approved under this part during any fiscal year beginning after September 30, 1976, shall (subject to subsection (d) of this section) be distributed as follows:
(1) of such amounts as are collected periodically which represent monthly support payments, the first $50 of any payments for a month received in that month, and the first $50 of payments for each prior month received in that month which were made by the absent parent in the month when due, shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month;
(2) such amounts as are collected periodically which are in excess of any amount paid to the family under paragraph (1) and which represent monthly support payments shall be retained by the State to reimburse it for assistance payments to the family during such period (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing);
(3) such amounts as are in excess of amounts retained by the State under paragraph (2) and are not in excess of the amount required to be paid during such period to the family by a court or administrative order shall be paid to the family; and
(4) such amounts as are in excess of amounts required to be distributed under paragraphs (1), (2), and (3) shall be (A) retained by the State (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing) as reimbursement for any past assistance payments made to the family for which the State has not been reimbursed or (B) if no assistance payments have been made by the State which have not been repaid, such amounts shall be paid to the family.
As amended in 1996, 42 U.S.C. § 657 now provides, in pertinent part:
Subject to subsection (e) of this section, an amount collected on behalf of a family as support by a State pursuant to a plan approved under this part shall be distributed as follows:
(1) Families receiving assistance
In the case of a family receiving assistance from the State, the State shall
(A) pay to the Federal Government the Federal share [[16]] of the amount so collected; and
(B) retain, or distribute to the family, the State share [[17]] of the amount so collected.
DSS asserts that because the distribution of child support was governed in the past by 42 U.S.C. § 657, and effective on October 1, 1996, no provision therein is made for the distribution of the state share, the state is left without a legislative framework from which to distribute any child support collected. Plaintiffs have cited and we know of no other statutory or administrative provision which would accomplish this purpose. The *1026 new DSS rule, La.Admin.Code, Title 67, § 2514, fills the gap created by the changes in 42 U.S.C. § 657, and provides in pertinent part:
A. Effective November 1, 1996 the Agency will distribute child support collections in the following manner:
1. In cases in which the applicant/recipient (AR) currently receives AFDC/Family Independence Temporary Assistance Program (FITAP) benefits, collections received in a month will be retained by the state to reimburse previous and current assistance amounts, with the following exceptions:
a. In cases in which the collection amount and the court-ordered monthly obligation exceed the AFDC/FITAP amount, the AR will be refunded an amount that, added to the AFDC/FITAP amount, will bring the AR up to the court-ordered monthly obligation amount.
b. In cases in which the collection amount exceeds the amount of unreimbursed grant, the excess will be refunded to the AR up to the current arrearage amount. [[18]]
Therefore, we find the statement of emergency by DSS to be valid.
We find no merit in plaintiffs' argument that emergency rulemaking depriving recipients of this "bonus" without prior safeguards is constitutionally defective. Federal courts have held that the right to receive a pass-through payment is not "needs-based" and comparison of such payments to public assistance benefits that are needs based is inappropriate. In so holding, the court in Schwartz v. Dolan, 85-CV-1025 (N.D.N.Y. 6/16/94) 854 F.Supp. 932, 937-938, vacated in part on other grounds, 86 F.3d 315 (2d Cir. 1996), discussed the origins of the $50 bonus [19] as follows:
This Court is cognizant of the fact that a payment of up to $50 as a pass-through can be a significant supplement to a family with limited resources. However, in addition to providing a supplement to public assistance recipients, the pass-through provision (a) provides an incentive for AFDC recipients to cooperate with support enforcement; (b) provides an incentive for absent parents to make regular and timely support payments; and (c) helps reduce governmental spending and the federal deficit. [Citations omitted.] Moreover, since such payment is a bonus, and not a benefit to which the family becomes entitled based upon need, plaintiffs' interests are not as compelling as those of persons who face the reduction or termination of AFDC benefits. [Emphasis added.]
Plaintiffs make much of the trial court statement that the emergency rule was temporarily justified as balanced against public interests, and while this is not the criteria which is provided by La.R.S. 49:953(B)(1) as authority for emergency rules, it is a concept which is implicit in those instances where emergency rules are authorized by that statute. Consequently, we find that any rights these parties have are adequately protected by other legislatively mandated administrative procedures. Emergency rules are only valid for a limited period of time under La.R.S. 49:954(B)(2) which provides, in pertinent part:
Such emergency rule shall not remain in effect beyond the publication date of the Louisiana Register published in the month following the month in which the emergency rule is adopted, unless such rule and the reasons for adoption thereof are published in said issue; provided, however, that any emergency rule so published shall not be effective for a period longer than one hundred twenty days, except as provided by R.S. 49:967(D), but the adoption of an identical rule under Paragraphs (1), (2) and (3) of Subsection A of R.S. 49:953 is not precluded. *1027 It is evident that emergency rulemaking is not intended to take the place of regular rulemaking. Emergency rules are designed to take effect quickly and to fill in a gap during a time of peril or need before a regular rule can be properly enacted and made effective pursuant to the procedure outlined in La.R.S. 49:953(A). Emergency rules are by their nature temporary. Due to the transitory existence of an emergency rule, it is obvious that judicial review thereof is necessarily limited to a determination that the rule was adopted in accordance with one or more of the reasons provided by La.R.S. 49:953(B)(1). A framework for contesting substantive issues, as are argued almost exclusively by plaintiffs herein, is provided as a part of the regular rulemaking process. Thus, if DSS chooses to make an emergency rule permanent by means of the regular rulemaking procedure, plaintiffs will have an opportunity at that time to express their substantive concerns.[20] Consequently, we believe the trial court was correct in finding that the emergency rulemaking undertaken by DSS, as discussed hereinabove, was authorized by La.R.S. 49:953.
For the reasons assigned herein, the judgment of the lower court is AFFIRMED. Costs of this appeal are assessed equally among the plaintiffs.
NOTES
[1] This litigation points up a common misconception concerning the organization and operation of our governmental system; i.e., that the public can directly control, via judicial action, discretionary functions of its elected officials. Most of the complaints plaintiffs express herein regarding policy decisions of the current administration can only be addressed at the ballot box.
[2] Plaintiffs allege that the new federal welfare law, The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, provides that in order to receive funds under the new law, a state must submit a "State Plan" which describes the state's policy choices as to how it will implement the new law, including an objective criteria for the delivery of benefits and the determination of eligibility and for fair and equitable treatment. Further, Section 402 requires a certification from the governor that local governments and private sector organizations have been consulted and given at least 45 days to submit comments on the Plan. Plaintiffs indicate Section 116(b)(1) gives a state the option to accelerate the effective date (July 1, 1997) by early submission of the Plan, thereby entitling the state to enhanced funding and accelerating the effective date of the new welfare laws to the date of the submission. Plaintiffs allege early submission of the Plan also triggers early exposure of the state to penalties and early exposure of indigent aid recipients to the sixty month aid limit as well as to reduced benefits. Plaintiffs allege Louisiana's Plan does not meet all federal requirements in addition to being violative of state laws.
[3] In answer to plaintiffs' brief, defendants state," Although DSS originally planned to eliminate the $50.00 child support disregard by emergency rulemaking, normal rulemaking procedures are being followed." Nevertheless, such an emergency rule appears at 22 La.Reg. No. 11, p. 1119 (11/20/96). The $50.00 is referred to variously as a "disregard" and a "pass-through"; however, we choose to denominate these funds as a "bonus" for reasons which follow hereinafter.
[4] For the most part, plaintiffs' claims encompass changes to public assistance programs to be effected in accordance with the intentions expressed in the State Plan, and to which DSS responded, essentially, that the matter is not ripe for dispute as the rules which would implement such changes have not yet been promulgated.
[5] A party who neither answers an appeal nor files his own appeal is not entitled to any modification in his favor of the judgment appealed. La.C.C.P. 2133; Matthews v. Consolidated Companies, Inc., 95-1925, p. 1 (La. 12/8/95) 664 So.2d 1191; McMorris v. McMorris, 94-0590, p. 8 (La.App. 1st Cir. 4/10/95) 654 So.2d 742, 748.
[6] A declaratory judgment under La.R.S. 49:963 may be obtained only on three grounds: (1) the rule is unconstitutional; (2) the rule exceeds the statutory authority of the agency; (3) the rule was adopted without substantial compliance with rulemaking procedures. Louisiana Chemical Association v. Department of Environmental Quality, 577 So.2d 230, 233 (La.App. 1st Cir. 1991); Louisiana State Medical Society v. Louisiana State Board of Nursing, 484 So.2d 903, 907 (La. App. 1st Cir.), affirmed, 493 So.2d 581 (La. 1986).
[7] Even though DSS does not have in place the rules required by La.R.S. 49:962 for disposition of petitions for declaratory orders/rulings, the parties agreed to the procedure undertaken. La. R.S. 49:962 provides that declaratory orders and rulings have the same status as agency decisions or orders in adjudicated cases.
[8] This review is confined to the record. La.R.S. 49:964(F).
[9] Obviously, the intent of the state was not to effect changes at the time the State Plan was submitted in October of 1996, but, rather, to begin to implement the changes, as stated, in January of 1997. Plaintiffs/appellants did not establish as of the time the instant litigation was concluded in the lower court, that any action intended to actually implement those changes was undertaken by the state either by rulemaking or otherwise, with the exception of the emergency child support rule addressed herein.
[10] The State Plan stated that effective 10/1/96," non-citizens will be treated in accordance with the provisions outlined in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996." Thereafter, the state purported to adopt an emergency rule pertaining to aliens; however, the matter is now moot as modified and expanded by subsequent rulemaking. Moreover, the appellants do not contend the issue is currently viable.
[11] It should be understood that it is not every generic decision or internal affair of an agency, a part of the executive branch of our state government under La. Const. Art. 4, § 1(A), which can be subject to judicial review. See In the Matter of Carline Tank Services, Inc., 627 So.2d 669, 672 (La.App. 1st Cir.1993) (on rehearing); Grace v. Board of Trustees for State Colleges and Universities, 442 So.2d 598, 601 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1223 (La.1984).
[12] Since we find the state's plan to undertake the enactment of certain welfare reform measures had not yet occurred at the time this matter was litigated, we find it unnecessary to address the substantive merits of plaintiffs' claims thereon.
[13] We note the state's reference, in brief to this court, to "confusing and irrelevant issues and questions," apparently with the inference that same was exclusively attributable to plaintiffs/appellants; however, much confusion would have been avoided if the state would have refrained from "trying to be as cooperative as possible" and simply declined to address plaintiffs' arguments/claims with regard to what the state was "thinking about doing in the future."
[14] The "child support collections" referred to result from governmental efforts to collect past due child support from recalcitrant and/or absent parents and are not government originated funds. In Louisiana, the parent receiving AFDC assistance automatically assigns to the agency his/her right to collect child support owed for each child up to the amount of the public assistance money paid for each child. See La.Admin.Code, Title 67, § 1183.
[15] The $50 bonus is not counted as income of the family for the determination of eligibility for AFDC assistance.
[16] "Federal share" is defined by Section 457(c)(2) as "that portion of the amount collected resulting from the application of the Federal medical assistance percentage in effect for the fiscal year in which the amount is collected."
[17] "State share" is defined by Section 457(c)(4) as "100 percent minus the Federal share."
[18] The plain reading of this provision results in the conclusion, that as a practical matter, an AFDC recipient would only be affected by the absence of this emergency rule to the extent of being deprived of a payment to which he/she would otherwise be entitled in the situations enumerated in sections (1)(a) and (1)(b).
[19] The $50 bonus has been referred to as a "disregard" because this income has, in the past, not been counted as income in determining a recipient's eligibility for welfare benefits; and, it has been referred to as a "pass-through" because it has, in the past, been paid directly to the welfare recipient without regard to current or accrued AFDC grant indebtedness.
[20] Though not pertinent to this litigation, we note the subsequent undertaking by the state of regular rulemaking procedures to permanently implement the emergency rule at issue herein, as well as, to implement intentions expressed in the State Plan. 22 La.Reg. No. 12, pp. 1231, 1297 (12/20/96); 23 La.Reg. No. 1, pp. 78, 79, 103, 104,106 (1/20/97); 23 La.Reg. No. 2, pp. 209, 243, 244, 245, 247 (2/20/97); 23 La.Reg. No. 3, p. 304 (3/20/97).