761 So.2d 707 (2000)
PREMIER GAMES, INC.
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, VIDEO GAMING DIVISION.
No. 99 CA 0624.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
*708 Richard P. Ieyoub, Attorney General by L. Rand Dennis, Thomas A. Warner, III, Assistant Attorneys General, Counsel for Appellant.
Doucet-Speer, P.L.C. by J. Louis Gibbens, III, Jeffery F. Speer, Lafayette, Counsel for Appellee.
Before BROWN, GASKINS & PEATROSS, JJ., (Pro Tempore).
PEATROSS, J., Pro Tempore.
At issue in this appeal is the trial court's determination of the invalidity of emergency rules adopted by the State of Louisiana through the Department of Public Safety and Corrections, Public Safety Services, Video Gaming Division ("the Division"), effective February 10, 1995, as applied to Plaintiff, Premier Games, Inc. ("Premier"). For the reasons stated herein, the judgment of the trial court is affirmed.

FACTS AND PROCEDURAL HISTORY
The facts in this case are undisputed. Premier is a Louisiana corporation engaged in the operation of video gaming devices. The Division collects fees for the operation of video gaming devices. Prior to July 1, 1994, it was the policy of the Division to allow the collection of device operation fees on a quarterly basis, prorating the fees according to the quarter of the fiscal year in which each video gaming device was enrolled. Although a legislative attempt was made to begin collecting the device operation fees as a non-prorated annual fee, it was later determined by the Division that there were already video gaming regulations in effect that provided for the proration of fees. The fees between July 1, 1994, and February 10, 1995, were prorated and the excess fees collected were refunded.
*709 Subsequently, the Division adopted Emergency Video Gaming Regulations, which are the subject of the instant litigation. The emergency rules, including LAC 42:XI 2409b(1), became effective February 10, 1995, and provided that the annual device operation fees would be due on June 30th of each year, payable quarterly, but that the fees would not be prorated.
In response to notification of said rule, John Hess, manager of the gaming division of Premier, under protest, made a $30,000 payment on February 16, 1995, to the Division for 40 new video gaming devices. The payment represented amounts owed for three quarters of the fiscal year that began July 1994. A portion of that amount, $20,000, was payment for fees due for the first two quarters of the fiscal year, during which quarters the devices were not yet in operation.
Thereafter, the emergency and previous permanent regulations were amended, effective June 20, 1995, once again providing that device operation fees would be prorated on a quarterly basis. Premier requested a refund or rebate of the $20,000, which request was denied by the Division. The reason provided by the Division for the denial was that the payment was collected after the February 10, 1995 effective date of the emergency rules. Premier then requested an administrative hearing for agency review. The Division informed Premier that a hearing was not available because the Department of Public Safety and Corrections never promulgated any procedural regulations to implement the declaratory review proceeding.
Premier filed a petition for declaratory judgment, seeking to have the emergency rules of February 10, 1995, declared invalid and seeking reimbursement of the $20,000 in excess fees paid pursuant to the emergency rules. The Division filed a peremptory exception of no cause of action, which was denied by the trial court. After a trial on the merits, the trial court held in favor of Premier, declaring that the emergency rules adopted by the Division were invalid as applied to Premier, ordering the Division to refund to Premier the $20,000 collected on February 16, 1995, and further ordering that the Division pay judicial interest on the principal amount from February 16, 1995, until refunded. All costs were assessed to the Division and Premier's request for attorney fees was denied.[1]
In its reasons for judgment, the trial court stated that the Division failed to comply with the rulemaking requirement in La. R.S. 49:953(B)(1), requiring a statement of specific reasons why the failure to adopt the rule on an emergency basis would result in imminent peril to the public health, safety or welfare.[2] The court's review of the emergency rule failed to find even one fact to validate the Division's invocation of emergency rule procedure.
The Division suspensively appeals, asserting three assignments of error, which contain essentially the following two arguments: (1) that the trial court erred, as a matter of law, in the application of a version of La. R.S. 49:953(B), which the Division alleges was not effective until June 29, 1995, to the emergency rules adopted by the Division on February 10, 1995; and (2) that Premier failed to meet its burden of proving the invalidity of the emergency rules under State v. Davis, 448 So.2d 645 (La.1984).
Premier argues that La. R.S. 49:953(B) requires that the emergency rule be published in the Louisiana Register with the *710 reasons for the finding of the emergency submitted by the agency. It notes that the Division's declaration of emergency failed to state any fact which would establish there was even some potential harm which it sought to avert by adopting the emergency regulation at issue under the version of La. R.S. 49:953(B) that was in effect on February 10, 1995. After reviewing the applicable statutory provisions, attorney general opinions and jurisprudence, we are constrained to agree with Premier.

DISCUSSION
The relevant facts of this matter are not disputed by the parties. Accordingly, this court's review is limited to issues of law. Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 97-2119 (La.App. 1st Cir.11/6/98), 722 So.2d 317, writ denied, 98-2995 (La.12/09/98), 729 So.2d 583, and cases cited therein.
The procedure for adoption of state administrative rules is set forth in La. R.S. 49:953. The version of La. R.S. 49:953(B) which was effective on February 10, 1995, provided, in pertinent part:
B. (1) If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon shorter notice than that provided in R.S. 49:953(A) and within five days of adoption states in writing to the governor of the state of Louisiana, the attorney general of Louisiana, the speaker of the House of Representatives, the president of the Senate, and the Department of the State Register, its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The provisions of this Paragraph also shall apply to the extent necessary to avoid sanctions or penalties from the United States, or to avoid a budget deficit in the case of medical assistance programs or to secure new or enhanced federal funding in medical assistance programs.
(2) Notice of the emergency rule shall be mailed to all persons who have made timely request of the agency for notice of rule changes, which notice shall be mailed within five days of adoption of the emergency rule. The office of the state register may omit from the Louisiana Register any emergency rule the publication of which would be unduly cumbersome, expensive, or otherwise inexpedient, if the emergency rule in printed or processed form is made available on application to the adopting agency, and if the Louisiana Register contains a notice stating the general subject matter of the omitted emergency rule, the reasons for the finding of the emergency submitted by the agency, and stating how a copy thereof may be obtained. (Emphasis added.)
The version of La. R.S. 49:954(B), governing the filing and taking effect of such agency rules, that was in effect on February 10, 1995, provided, in pertinent part:
B. Each rule hereafter adopted shall be effective upon its publication in the Louisiana Register, said publication to be subsequent to the act of adoption, except that:
(1) If a later date is required by statute or specified in the rule, the later day is the effective date.
(2) Subject to applicable constitutional or statutory provisions, an emergency rule shall become effective on the date of its adoption, or on a date specified by the agency to be not more than sixty days future from the date of its adoption, provided written notice is given within five days of the date of adoption to the governor of Louisiana, the attorney general of Louisiana, the speaker of the House of Representatives, and the president of the Senate, and the Department of the State Register as provided in R.S. 49:953(B). Such emergency rule *711 shall not remain in effect beyond the publication date of the Louisiana Register published in the month following the month in which the emergency rule is adopted, unless such rule and the reasons for adoption thereof are published in said issue; provided, however, that any emergency rule so published shall not be effective for a period longer than one hundred twenty days, except as provided by R.S. 49:967(D), but the adoption of an identical rule under Paragraphs (1), (2) and (3) of Subsection A of R.S. 49:953 is not precluded. The agency shall take appropriate measures to make emergency rules known to the persons who may be affected by them.
In 1995, an amendment to La. R.S. 49:953 was passed which, in part, added a sentence specifying the required contents of the agency statement of its reason for finding it necessary to adopt an emergency rule.[3] Acts 1995, No. 1057. In its reasons for judgment, the trial court incorrectly refers to the current version of La. R.S. 49:953, which did not go into effect until after February 10, 1995.[4]
The declaration of emergency relating to the emergency rule LAC 42:XI 2409B(1) was published in the Louisiana Register, Vol. 21, No. 2, February 20, 1995, and provided, in pertinent part:
Emergency rulemaking is necessary in order to implement the new video gaming law, effective July 1, 1994, thereby ensuring the collection of all video gaming revenues that are to be paid to the state treasurer, and further, to allow the Office of State Police to effectively regulate the video gaming industry for the purposes of maintaining the public confidence in the integrity of the industry, and protecting the health, welfare and safety of the public.
LAC 42:XI 2409B(1), required the payment of device operation fees for each video gaming device as a nonrefundable annual fee. Said annual fee was allowed to be paid quarterly.
Judicial notice may be taken of rules of boards, commissions, and agencies of this state that have been duly published and promulgated in the Louisiana Register. La. C.E. Art. 202(B)(b). Bower v. Schumpert Medical Center, 618 So.2d 600 (La. App. 2d Cir.1993).
It is evident that emergency rulemaking is not intended to take the *712 place of regular rulemaking. Emergency rules are designed to take effect quickly and to fill in a gap during a time of peril or need before a regular rule can be properly enacted and made effective pursuant to the procedure outlined by statute. Emergency rules are, by their nature, temporary. Due to the transitory existence of an emergency rule, it is obvious that judicial review thereof is necessarily limited to a determination that the rule was properly enacted. Cressey v. Foster, 96-2716 (La. App. 1st Cir.4/25/97), 694 So.2d 1016.
There is a presumption of propriety in promulgation of regulations of administrative agencies, and the burden is on the party challenging the promulgation to prove the defects. In the absence of any suggestion of any fatal irregularities or the nonobservance of any essential requirement in the passage of administratively adopted regulations, the court must necessarily assume that it was legally adopted. State v. Davis, 448 So.2d 645 (La.1984).
In the case sub judice, Premier made specific allegations of irregularity in the promulgation of the emergency rules in arguing that facts were not set forth as reasons for the declaration of emergency. In light of Premier's suggestion of the nonobservance of the essential requirement in the passage of the emergency rule, and the trial court's judicial notice of the content of that declaration of emergency, we conclude that Premier succeeded in rebutting the presumption of propriety in the promulgation of the emergency rule in question.
Furthermore, we do not find that the requirements were met under the 1994 version of La. R.S. 49:953 for a declaration of emergency. Said provision required an agency to find imminent peril to the public health, safety or welfare and required the agency to make a written statement to the Department of the State Register, including the agency's reasons for that finding of imminent peril. The declaration of emergency herein included as purported reasons the ensuring of the collection of all video gaming and the allowing of the Office of State Police to effectively regulate the video gaming industry for the purposes of maintaining the public confidence in the integrity of the industry, and protecting the health, welfare and safety of the public. This broad statement does not include any factual basis for the conclusion that imminent peril to the public health, safety or welfare existed meriting the declaration of an emergency rule. We believe that the statute's requirement of a statement of reasons for such a finding demands more than a conclusory statement, but contemplates a description of the facts and circumstances which justify the conclusion that imminent peril exists.
Under these circumstances, we find that the trial court did not err in finding the rule relied upon in this case by the Division to be invalid as applied to Premier. As previously stated, although the trial court's reasons for judgment were flawed due to reliance on the incorrect version of the statute, the judgment itself was correct and controls. The trial court correctly declared that this rule cannot serve as authority for denying a refund to Premier of the $20,000 it collected on February 16, 1995, representing excess video operation fees collected pursuant to the invalid rule.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs, in the amount of $985.60 are assessed to Appellant, the State of Louisiana through the Department of Public Safety and Corrections, Public Safety Services, Video Gaming Division. See La. R.S. 13:5112(A).
AFFIRMED.
NOTES
[1] We note that Premier did not answer the appeal; therefore, the propriety of the trial court's denial of Premier's request for attorney fees is not before this court.
[2] At the outset, we note that the trial court correctly quotes the text of the present version of La. R.S. 49:953(B)(1), but cites the wrong statute number, that of La. R.S. 49:954(B)(1). Additionally, both parties to the suit refer to the incorrect statute number in brief. The correct citation of the applicable statute in this case is La. R.S. 49:953(B)(1), which will be used throughout this opinion.
[3] The amended and current version of La. R.S. 49:953(B)(1) reads:

If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon shorter notice than that provided in Subsection A of this Section and within five days of adoption states in writing to the governor of the state of Louisiana, the attorney general of Louisiana, the speaker of the House of Representatives, the president of the Senate, and the Department of the State Register, its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The provisions of this Paragraph also shall apply to the extent necessary to avoid sanctions or penalties from the United States, or to avoid a budget deficit in the case of medical assistance programs or to secure new or enhanced federal funding in medical assistance programs. The agency statement of its reason for finding it necessary to adopt an emergency rule shall include specific reasons why the failure to adopt the rule on an emergency basis would result in imminent peril to the public health, safety, or welfare, or specific reasons why the emergency rule meets other criteria provided in this Paragraph for adoption of an emergency rule. (Emphasis added.)
[4] The trial court's reliance on the later, incorrect version of the statute does not preclude our finding that the adoption of the emergency rule was not in compliance with the correct version of the statute which was in effect in February 1995. Appeal lies from the judgment itself, not the reasons for judgment. La. C.C.P. art. 2083. Where the trial court's reasons for judgment are flawed, but the judgment is correct, the judgment controls. Reasons for judgment set forth the basis for the court's holding and are not binding. Wilson v. Wilson, 30,445 (La.App.2d Cir.4/9/98), 714 So.2d 35; Comeaux v. City of Ville Platte, 617 So.2d 1313 (La.App. 3d Cir.1993); Melton v. General Elec. Co., Inc., 625 So.2d 265 (La. App. 4th Cir.1993).