1 .CARTER, C.J.
The Louisiana State Police, Indian Casino Gaming Division (Division), denied the application of Leslie Bonano, Inc. (Bonano) to obtain a non-gaming supplier license to promote boxing matches at Indian gaming casinos. The Division -denied the license on the basis that the corporation’s sole owner, Leslie Bonano (Mr. Bonano), failed to disclose five prior businesses he worked for on the application. The Division found that failure to disclose a material fact to the Division is grounds for denial pursuant to the Tribal/State Class III Compact, Section 7(C)(1)(d) & (e) as entered into by the State and Chitimacha Tribe pursuant to the Indian Gaming Regulatory Act of 1988 (25 U.S.G. § 2701) (Compact). Specifically, the Division found that Mr. Bonano failed to list his prior association with Box-ercise of America, Jefferson Sports Commission, Read Seafood, Boxing on the Ice, and Kushner Promotions.
The Division also denied the application because they found that Mr. Bonano “created or fostered an appearance of impropriety” through associations with persons *106 whose present or past activities, habits, criminal record, or reputation “threatens the public interest in the integrity of gaming” in contravention of Section 7(C)(l)(n) of the Compact. The decision was based on Mr. Bonano’s prior associations with Arthur Pelullo, an organized-crime-family associate; Frank Caracci, a reputed New Orleans mob figure and convicted felon; Robert Guidry, who pled guilty to a federal felony related to his ownership of a Louisiana licensed riyerboat; and Mike Stuebben, who has a history of felony convictions for gambling offenses.
The parties mutually agreed to review of the decision by the Louisiana Gaming Control Board (Board). The hearing officer reversed the prior decision and ordered that the Division issue state certification to Bonano as a non-gaming [¡¡supplier. The hearing officer found Mr. Bonano did not intentionally fail to list the five businesses; his involvement with the businesses does not threaten the public interest in the integrity of gaming; his associations with “unsavory characters” did not threaten the public interest in the integrity of gaming; and the Division did not carry its burden of proving that Mr. Bonano should be disqualified as a non-gaming supplier.
The Division appealed the hearing officer’s decision to the Louisiana Gaming Control Board (Board) pursuant to LSA-R.S. 27:25E. The Board considered this matter in open meeting and reversed the decision of the hearing officer, denying a non-gaming supplier’s license to Bonano. Bonano’s motion for rehearing was also denied.
Bonano filed a Petition for Judicial Review in the Nineteenth Judicial District Court, which was denied, thus dismissing the case. Bonano appeals.
STANDARD OF REVIEW
The Board has regulatory authority, control and jurisdiction, including investigation and licensing, over all aspects of gaming activities and operations as authorized pursuant to the Louisiana Gaming Control Law and the Louisiana Administrative Procedure Act. See LSA-R.S. 27:15B(1); LSA-R.S. 27:24A(1); and LSA-R.S. 49:950, et seq. Any person adversely affected by an action or decision of the Board may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act (APA). See LSA-R.S. 27:26; and LSA-R.S. 27:310E.
- The APA specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964F. The district court may affirm or remand the agency decision. However, reversal or modification of the agency decision is restricted to instances in which substantial | ¿rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court, with due regard to the agency’s determination of credibility issues where it had the opportunity to observe first-hand the demeanor of the witnesses. LSA-R.S. 49:964G. An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. LSA-R.S. 49:965.
On legal issues, the reviewing court gives no special weight to the findings of the administrative agency, but conducts a de novo review of questions of law *107 and renders judgment on the record. Louisiana Automotive Financial Servs., Inc. v. Department of Econ. Dev., 98-0981, p. 4 (La.App. 1st Cir.5/14/99), 743 So.2d 217, 219. We are free to make our own determinations of the correct legal meaning of the appropriate statutes and render judgment on the record. Southlake Dev. Co. v. Secretary of Dept. of Revenue & Taxation, 98-2158, p. 3 (La.App. 1st Cir.11/5/99), 745 So.2d 203, 205, writ denied, 99-3405 (La.2/4/00), 754 So.2d 235. Appellate review of questions of law is simply review of whether the lower court was legally correct. Premier Games, Inc. v. State Dept. of Public Safety & Corrections, 99-0624, p. 3 (La.App. 1st Cir.5/12/00), 761 So.2d 707, 710.
LAW AND ANALYSIS
This dispute revolves around the interpretation of Section 7(C) of the Tribal/State Compact between the Chitimacha Tribe and the State of Louisiana that provides for the suitability of an applicant for state certification. Section 7 states in pertinent part:
| S(A) Prior to providing any functions or services, all persons and entities shall be licensed by the Chitimacha Tribe of Louisiana and be certified by the State of Louisiana.
[[Image here]]
(C)(1) The State of Louisiana may revoke, suspend, or deny a State certification for any reason it deems to be in the public interest. These reasons include, but are not limited to, .when an applicant for or holder of State certification:
[[Image here]]
(d) Fails to disclose or makes a misrepresentation of a material fact to the Chitimacha Tribe of Louisiana or the State of Louisiana.
(e) Fails to prove their qualifications in accordance with the provisions of this Tribal-State Compact.
[[Image here]]
(n) Has created or fostered an appearance of impropriety, by virtue of their present or past activities, criminal record, reputation, habits, or associations, or has otherwise engendered a situation which threatens the. public interest in the integrity of gaming, the effectiveness of gaming regulation and control, or in fair and lawful practices, methods, and financial arrangements in gaming.
The Board reversed the hearing officer’s decision, thus denying Mr. Bonano’s application for 'a non-gaming license, on the grounds that the Division’s initial denial was proper as the application and subsequent investigation of Mr. Bonano justified denial under Section 7(C)(1)(d) and (n). We shall review this decision to determine if the decision and subsequent affirmation by the district court was proper.
The state can deny certification for any reason it deems to be in the public interest. Failure to disclose a material fact to the Tribe in the application is specifically set out in Section 7(C)(1)(d) of the Compact as a reason for denying licensure. It is undisputed that Mr. Bonano failed to list at least five businesses with which he was associated on his application, two of which (Boxing on the Ice |fiand Kushner Promotions) he w;as associated with only seven months prior to filing his application. The Board also found that Mr. Bonano had failed to disclose his association with Banner Productions, where he worked as a boxing matchmaker and promoter in 1998 and from whom he received over half his income for that year. These associations, all three in the field of boxing and occurring within a year of the application, are material facts that should have been disclosed on the application.
*108 The hearing officer found that these omissions were unintentional. The Compact does not require that the failure to disclose be intentional. As such, we find that the Board did not err in finding that Mr. Bonano’s failure to disclose material facts are grounds for denial of the application. Thus, the district court was justified in dismissing review on this issue.
The Board also found that Section 7(C)(l)(n) provides additional grounds for denial of the application. Under Section 7(C)(l)(n), denial is warranted when the applicant has “created or fostered an appearance of impropriety, by virtue of their present or past activities, criminal record, reputation, habits, or associations, or has otherwise engendered a situation which threatens the public interest in the integrity of gaming, the effectiveness of gaming regulation and control, or in fair and lawful practices, methods, and financial arrangements in gaming.” (emphasis added). Special notice should be given here to the word “appearance.” The “appearance of impropriety” that threatens the public interest in the integrity of gaming is all that is required to justify denial of a license.. The statute does not require actual proof of impropriety, such as a criminal conviction, for the Division to deny an application for a license.
The Board noted in its written reasons that Mr. Bonano’s character is not an' issue. He was a police officer and civil sheriff in good standing for 27 years, and |7his good reputation in the boxing industry has never been questioned. He has, however, conducted business with some less than exemplary business associates throughout his years in the private sector. After retiring as a deputy sheriff, Mr. Bonano was employed.as. a supervisor for A-Ace Video Gaming for one year. A-Ace Video Gaming was owned by Robert Gui-dry, who pled guilty to -a federal felony related to his ownership of a Louisiana licensed riverboat. At A-Ace Video Gaming Mr. Bonano worked with Frank Carac-ci, whom Mr. Bonano, through his years as a police officer, knew was identified as a member of organized crime in New Orleans and a convicted felon. Mr. Bonano was employed as a boxing promoter for Banner Productions, owned by Arthur Pe-lullo, identified as a member of organized crime in Philadelphia. And there are questions regarding Mr. Bonano’s relationship with Mike Stuebben, a bookmaker and gambler with felony convictions.
All that is needed for denial of a license is the appearance of impropriety, through prior associations, that threatens the public interest in the integrity of gaming. The Board did not abuse its discretion in finding that Mr. Bonano’s association with four persons affiliated with organized crime or convicted of a felony, all connected with the gaming industry, creates an appearance of impropriety such that a threat exists as to the public interest in the integrity of gaming. This is correct even though Mr. Bonano has never been convicted of a crime himself.
The- State of Louisiana has a clear, legitimate and compelling interest in regulating the gaming industry. The Legislature has provided for the strict regulation of the gaming industry in LSA-R.S. 27:2. Furthermore, the Legislature has explicitly provided that a video-gaming license is a pure and absolute revocable privilege and not a right, property or a protected interest under the | ^constitutions of either the United States or the State of Louisiana. See LSA-R.S. 27:‘2B; LSA-R.S. 27:301D. We believe that a non-gaming supplier’s license equally falls under the State’s interest in regulating the gaming industry. As such, the licensing requirements for anyone associated with the gaming industry should not be taken lightly.
Finally, Bonano alleges that the majority of the Board has not heard the *109 case or read the record and as such it is entitled to a new hearing in order to file briefs and present oral argument as provided in LSA-R.S. 49:957. The Board reviewed the decision of the hearing officer in an open meeting held June 2, 2000. The transcript of that meeting reveals that counsel presented extensive oral argument on this issue. Eight of the nine voting members of the board were present and voted five to three in a roll-call vote to reverse the hearing officer and deny a license to Bonano.[2] Bonano’s argument on this issue is utterly without merit.
For the above reasons we affirm the ruling of the district court denying Leslie Bonano Inc.’s petition for judicial review and assess the costs of this appeal against Leslie Bonano, Inc.
AFFIRMED.

. The Louisiana Gaming Control Board consists of nine members and two ex officio members. LSA-R.S. 27:11A. The ex officio members are nonvoting members who are not counted for the purpose of establishing a quorum. LSA-R.S. 27:1 ID. .